[Cite as *In re E.L.*, 2019-Ohio-1490.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                     )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA      )

IN RE: E.L.                        C.A. No.      18CA0060-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.      2018 04 DQ 0114

DECISION AND JOURNAL ENTRY

Dated: April 22, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals from the decision of the Medina County Court of Common Pleas, Juvenile Division. This Court affirms.

I.

{¶2} E.L. was thirteen years old at the time a complaint was filed against him in the Juvenile Court. The complaint alleged that he was a delinquent child by reason of one count of rape, a first-degree felony if committed by an adult. The victim, V.T., was six years old at the time and E.L.'s would-be sister, as his parents were in the process of adopting her. The allegations that led to the complaint arose when V.T. made several statements at school, and later at the child advocacy center, indicating that she had kissed E.L.'s genitals.

{¶3} Following E.L.'s first pretrial, the State asked the court to hold hearings to determine (1) whether V.T. was competent to testify, and (2) whether her out-of-court statements would be admissible pursuant to Evid.R. 807. The court conducted an in camera interview with

V.T. and determined that she was not competent to testify. It then conducted the Evid.R. 807 hearing. At the conclusion of the hearing, the court determined that V.T.'s statements were not admissible under either Evid.R. 807, 803(4), or 803(2). Consequently, it issued a decision prohibiting the State from introducing the statements at the adjudication hearing.

{¶4} Pursuant to Juv.R. 22(F), the State immediately appealed from the trial court's decision to exclude V.T.'s statements. The State's appeal is now before us for review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FINDING THAT THE OUT-OF-COURT STATEMENTS OF CHILD VICTIM V.T. WERE INADMISSIBLE UNDER BOTH EVID.R. 807 AND EVID.R. 803 WHEN A HEARING WAS HELD ONLY WITH RESPECT TO THE STATEMENTS' ADMISSIBILITY UNDER EVID.R. 807. THE CHILD VICTIM V.T.'S OUT-OF-COURT STATEMENTS TO A SOCIAL WORKER WERE ADMISSIBLE UNDER EVID.R. 803(4) AS STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT.

{¶5} In its sole assignment of error, the State argues that the trial court erred when it determined that V.T.'s statements were inadmissible. The State asserts that the court misapplied the law when it conflated the distinct standards for admissibility set forth in Evid.R. 807, 803(4), and 803(2). Additionally, it asserts that the court ignored a wealth of case law governing the admissibility of statements under Evid.R. 803(4). For the following reasons, we reject the State's assignment of error.

{¶6} "[T]his Court generally reviews a trial court's evidentiary decisions for an abuse of discretion." *State v. Pitts*, 9th Dist. Medina No. 17CA0060-M, 2018-Ohio-3216, ¶ 23. "When the question presented on appeal is strictly one of law, [however,] this Court applies a de novo standard of review. *State v. Prade*, 9th Dist. Summit No. 28193, 2018-Ohio-3551, ¶ 7. "A de novo review requires an independent review of the trial court's decision without any

deference to [its] determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4. "De novo review is appropriate 'where a trial court's order is based on an erroneous standard or a misconstruction of the law * * *.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 16, quoting *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346 (2d Dist.1992). *See also State v. DeRemer*, 9th Dist. Summit No. 28692, 2018-Ohio-3931, ¶ 46.

{¶7} The fact that a child has been deemed incompetent to testify does not necessarily prohibit the admission of the child's statements at a trial or adjudicatory hearing. Under Evid.R. 807, the State may offer a child's out-of-court statement as evidence if the child is under twelve, the statement describes a sexual act, and the State satisfies the four additional elements contained within the rule. *State v. Meyerson*, 9th Dist. Summit No. 28549, 2017-Ohio-8726, ¶ 19.

> The State must show that: (1) "the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness * * *"; (2) the child's testimony "is not reasonably obtainable"; (3) there exists "independent proof of the sexual act * * *"; and (4) the defendant was given notice, at least ten days before trial or hearing, of the content of the statement and the circumstances surrounding it.

*Id.*, quoting Evid.R. 807(A)(1)-(4). The rule "contemplates that a pretrial hearing will be conducted at which time * * * an initial determination as to the admissibility of the child's statements should be made." *State v. Storch*, 66 Ohio St.3d 280 (1993), paragraph two of the syllabus.

{¶8} "The State need not satisfy the rigors of Evid.R. 807(A) if [a] child's statement can be admitted through a different hearsay exception." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 20. Evid.R. 803(4), for example, permits the introduction of

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception

or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid.R. 803(4). "To determine whether statements are admissible under [that rule], a court must look to the primary purpose of the statements." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 19. Statements made for the primary purpose of diagnosis or treatment are admissible per se while statements made for the primary purpose of forensic investigation are admissible only if the child is unavailable and the accused has had a prior opportunity to cross-examine him or her. *See State v. Weaver*, 9th Dist. Medina No. 17CA0092-M, 2018-Ohio-2998, ¶ 12. "Considerations that should be taken into account in making [a primary purpose] determination include the manner in which the child was questioned, whether there was a motive to fabricate, and whether the child understood the need to tell the truth." *State v. Walters*, 9th Dist. Summit No. 28582, 2018-Ohio-1175, ¶ 33, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 49. "In addition, the court may consider "the child's age and whether the proper protocol for interviewing children alleging sexual abuse was followed." *Walters* at ¶ 33.

{¶9} The State also may seek to admit a child's statement as an excited utterance. *See State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 19. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

> To be admissible under Evid.R 803(2) as an excited utterance, a statement must concern "some occurrence startling enough to produce a nervous excitement in the declarant," which occurrence the declarant had an opportunity to observe, and must be made "before there had been time for such nervous excitement to lose a domination over his reflective faculties."

*State v. Huertas*, 51 Ohio St.3d 22, 31 (1990), quoting *Potter v. Baker*, 162 Ohio St. 488 (1955), paragraph two of the syllabus. "The trustworthiness of the declaration (as being what the

declarant actually believes to be true) derives from the lack of opportunity to fabricate, not the moral character or maturity of the declarant." *State v. Wallace*, 37 Ohio St.3d 87, 95 (1988).

**{¶10}** The trial court held a hearing on the admissibility of V.T.'s out-of-court statements and ultimately determined that they were not admissible under either Evid.R. 807, 803(4), or 803(2). The State has not challenged the court's substantive ruling under Evid.R. 807, so this Court takes no position on the issue of whether the trial court abused its discretion by not admitting V.T.'s statements pursuant to that rule. It is the State's argument that the court erred when it reached an admissibility determination under Evid.R. 803(4) and 803(2) because the sole purpose of the hearing the court conducted was to determine the admissibility of the statements under Evid.R. 807. According to the State, the question of whether the statements were admissible under Evid.R. 803(4) or 803(2) was not before the court. Further, the State argues that the court erred in its application of those rules because, in reaching its decision, it considered the trustworthiness of V.T.'s statements. The State avers that neither Evid.R. 803(4), nor 803(2) instructs the court to consider the trustworthiness of a declarant's statements. According to the State, the court improperly imposed that additional factor when conducting its review and thereby conflated the distinct standards for admissibility set forth in Evid.R. 807, 803(4) and 803(2).

**{¶11}** To the extent the State argues that it was improper for the court to conduct an admissibility determination under Evid.R. 803(4) and 803(2), we reject its argument. "Under the invited error doctrine, '[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" *State v. Johnson*, 9th Dist. Summit No. 28268, 2017-Ohio-913, ¶ 9, quoting *Lester v. Leuck*, 142 Ohio St. 91 (1943), paragraph one of the syllabus. The application of the doctrine depends upon the nature of a party's role in the

court's erroneous decision-making; that is, whether it was an active or passive one. *See State v. Campbell*, 90 Ohio St.3d 320, 324 (2000). If the party "mere[ly] 'acquiesc[ed] in the trial judge's erroneous conclusion,'" the invited error doctrine will not bar him or her from challenging the court's ruling on appeal. *Id.*, quoting *Carrothers v. Hunter*, 23 Ohio St.2d 99, 103 (1970). If, however, the party "'induced' or 'was actively responsible' for the trial court's error," then the doctrine will bar him or her from obtaining a reversal on that basis. *Campbell* at 324. The Supreme Court "has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed." *Id.*

{¶12} The record reflects that, at the Evid.R. 807 hearing, it was the prosecutor who first broached the subject of the admissibility of V.T.'s statements under Evid.R. 803(4) and 803(2). The State argued that V.T.'s statements were admissible under those two exceptions and cited the court to supporting case law. The prosecutor then specifically "ask[ed] that the Court *admit [the statements]* under 807, *under excited utterance, and under medical diagnosis or treatment*." (Emphasis added.) Additionally, when later summarizing the State's position, the prosecutor argued "that the statements should be admitted under 807, and if not under 807, then they either fall under the medical exception or excited utterance."

{¶13} The record here does not support the conclusion that the State merely acquiesced in the trial court's decision to make an evidentiary ruling under Evid.R. 803(4) and 803(2). Because the State not only raised that issue, but specifically asked the court to conduct an admissibility determination with regard to those exceptions, the record supports the conclusion that the State "'induced' or 'was actively responsible' for" any error the court made in that regard. *Campbell* at 324. Thus, pursuant to the doctrine of invited error, the State cannot now

claim that the court erred by reaching an admissibility determination under Evid.R. 803(4) and 803(2). *See Johnson* at ¶ 9, quoting *Lester* at paragraph one of the syllabus.

{¶14} The trial court determined that V.T. "[was] presented as a disturbed child" who was "prone to physical, verbal and emotional outbursts." It noted that she had been assigned to a special classroom for emotionally disabled students and had her own attendant as well as a classroom teacher and aide. Though she was only six years old at the time, V.T. had been heard repeating the lyrics to several "sexually explicit rap songs with a decidedly adult content." Further, the court noted that she had exhibited alarming behavior on multiple occasions. Those behaviors included destroying items, purposely urinating on her clothing after removing it, and "blurt[ing] out alarming statements" such as "telling a classmate to 'go kill yourself.'"

{¶15} The trial court determined that V.T. had made statements about E.L. while at school and while being interviewed at the child advocacy center. School officials witnessed her pretend to unzip her pants, place a crayon near her crotch, and state, "These are my balls." Further, they heard her make a statement to the effect that E.L. had made her kiss them and "it was 'gross' but she did it anyway." While at the child advocacy center, V.T. began her interview by spontaneously offering that "[E.L.] did it." Upon questioning, she clarified that she "had kissed [E.L.'s] privates" while on the living room couch. Halfway through the interview, however, she retracted her statements and said that the encounter had never happened. The court found that, during V.T.'s interview, "[h]er demeanor * * * was unchanged from her norm, without additional frustration or anxiety, or decreased/increased mood."

{¶16} For purposes of Evid.R. 807, the trial court determined that the totality of the circumstances surrounding V.T.'s statements did not support the conclusion that she was likely to be telling the truth when she made them. *See* Evid.R. 807(A)(1). The court found that V.T.

"regularly made spontaneous outrageous statements and with the same breath retracted them." It also found that she had merely named the acts allegedly involved without providing any real description or details. Although V.T. was quite young at the time, the court noted that she was familiar with sexually explicit song lyrics such that she had been exposed to terminology that might otherwise be unexpected of a child her age. *See id.* Moreover, the court found that there was no independent proof that the sexual acts had occurred. *See* Evid.R. 807(A)(3). For the foregoing reasons, it concluded that V.T.'s statements were inadmissible under Evid.R. 807.

{¶17} With regard to Evid.R. 803(4), the trial court determined that none of the statements V.T. made during her advocacy center interview were elicited for the purpose of medical diagnosis or treatment. The court found that the forensic interviewer who met with V.T. "possessed no medical, psychological, or social workers' background." It further found that her qualifications only consisted of a handful of training sessions on forensic interviewing, which she described in general terms, and a recently obtained college degree in anthropology. Though the interviewer indicated that she was part of a "'team' for medical treatment," the court noted that "no treatment either of a medical or psychological form ever took place whatsoever." The court found that the interviewer merely acted "as a parrot" by repeating what V.T. had said to her and sharing it with law enforcement. It noted that V.T.'s initial statements occurred before the interviewer began her standard introductions or explained to V.T. the need to tell the truth while her retraction occurred after the interviewer told her, "we only speak the truth here[.]" For the foregoing reasons, the court concluded that V.T.'s statements were inadmissible under Evid.R. 803(4).

{¶18} For purposes of Evid.R. 803(2), the trial court found that V.T.'s statements did not qualify as excited utterances because "there was no testimony that any of the statements * * *

were ever made as part of any startling event, or caused by the stress or excitement from the event or condition * * *." The court found that V.T. habitually "made spontaneous outrageous statements and with the same breath retracted them." Further, with respect to the advocacy center interview, the court noted that V.T.'s demeanor remained unchanged the entire time she made and retracted the statements at issue. For the foregoing reasons, it concluded that her statements were inadmissible under Evid.R. 803(2).

{¶19} Upon review, we cannot conclude that the trial court, in conducting its analysis, conflated the distinct hearsay exceptions set forth in Evid.R. 807, 803(4), and 803(2). It is true that the court's written decision is comprised of one, unbroken discussion such that its findings and conclusions about distinct exceptions are, at times, intermingled. Greater clarity could have been achieved had the court addressed one exception at a time, analyzing and disposing of one before turning to the next. Even so, the court's failure to structure its decision in that manner has no bearing upon its substantive rulings. Clarity notwithstanding, the record does not support the State's argument that the court applied the wrong standard (i.e., Evid.R. 807) when it determined that V.T.'s statements were inadmissible under Evid.R. 803(4) and 803(2). As noted, the court based its conclusion upon the factors set forth in those distinct exceptions. *See* Discussion, *supra*. We, therefore, reject the State's argument that the court conflated the distinct standards for admissibility.

{¶20} The State also argues that the trial court erred when it applied Evid.R. 803(4) because it ignored a wealth of case law governing the admissibility of statements made for the purpose of medical diagnosis or treatment. The State argues that many courts, including this one, have routinely recognized that statements made to social workers and/or forensic interviewers at child advocacy centers are admissible under Evid.R. 803(4). *See, e.g., Weaver*,

2018-Ohio-2998, at ¶ 11, quoting *In re T.L.*, 9th Dist. Medina No. 09CA0018-M, 2011-Ohio-4709, ¶ 15. According to the State, the court "engaged in almost no analysis" and failed to examine any of V.T.'s individual statements for their primary purpose. The State argues that the court erred by not admitting the statements wherein V.T. identified her perpetrator and described the abuse that occurred, as those statements were clearly elicited for the purpose of medical diagnosis or treatment.

{¶21} Because the State's second argument pertains to the trial court's ultimate decision not to admit V.T.'s statements pursuant to Evid.R. 803(4), an abuse of discretion standard of review applies. *See Weaver* at ¶ 10. An abuse of discretion indicates that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶22} As this Court previously noted, Evid.R. 803(4) provides a hearsay exception for

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid.R. 803(4). This Court has "recognize[d] that a victim's statements to a social worker during a [child advocacy center] interview may qualify as statements made for purposes of medical diagnosis or treatment." *In re T.L.* at ¶ 15. The question is whether the statements were elicited for the primary purpose of medical diagnosis/treatment or forensic investigation. *See State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 44. "Considerations that should be taken into account in making [a primary purpose] determination include the manner in which the child was questioned, whether there was a motive to fabricate, and whether the child understood

the need to tell the truth." *State v. Walters*, 9th Dist. Summit No. 28582, 2018-Ohio-1175, ¶ 33, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 49. Additionally, the court should consider (1) "'the age of the child * * * and the consistency of her declarations,'" and (2) "'the manner in which a * * * medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse.'" *In re I.W.*, 9th Dist. Wayne Nos. 07CA0056, 07CA0057, 2008-Ohio-2492, ¶ 15, quoting *Muttart* at ¶ 49.

**{¶23}** The record reflects that the forensic interviewer who conducted V.T.'s interview at the child advocacy center had little experience. She testified that she received her college degree in anthropology in 2015 and began working at the advocacy center in July 2017. As for her training, she testified that she had attended several days of Beyond the Silence training in August and December 2017 and five days of Finding Words Ohio training in October 2017. She did not describe the components of either training and could not confirm whether they were accredited programs. Further, she acknowledged that she never completed any sort of apprenticeship or other on-the-job training before she began interviewing children at the advocacy center. She testified that she conducted V.T.'s interview in March 2018. There was no testimony about the number of interviews she had conducted by that point in time.

**{¶24}** The interviewer acknowledged that she was not a social worker. She explained that her role was to interview children and to share the information she learned with members of the center's multi-disciplinary team. Those team members included social workers, a nurse practitioner, a case manager, members of the prosecutor's office, and law enforcement. Yet, she indicated that the case manager was not present the day V.T. was interviewed and, for reasons

undisclosed, the center's nurse practitioner never had any involvement with V.T. It is also unclear from the record whether the social worker had any direct involvement with V.T.

{¶25} The interviewer testified that she typically began her interviews by introducing herself, reviewing certain rules, and building a rapport with the child being interviewed. With regard to the rules, she testified that it was her practice to discuss with the child the need to tell the truth and the need to ask for clarification if they failed to understand something. To ensure the child understood the need to tell the truth, she usually provided the child with various examples of a truth and a lie and had the child identify each. Yet, when interviewing V.T., the interviewer digressed from her usual format. She testified that V.T. was playing with a toy when she entered the interview room, so she asked V.T. about the toy. Because the toy belonged to E.L., V.T. began talking about him and called him "nasty." The interviewer then began asking V.T. questions about E.L., and those questions led to V.T. stating that "she had kissed [E.L.'s] privates." Additional questions then led to V.T. deviating from the topic.

{¶26} Not until after V.T.'s disclosure did the interviewer have a discussion with her about her telling the truth. According to the interviewer, her training directed her to follow a child's lead, so she allowed V.T. to control the flow of the conversation at the start of the interview rather than interrupt her and discuss the rules. She admitted, however, that V.T. recanted mid-way through the interview, indicating that she needed to tell the truth and that E.L. did not make her kiss his genitals. The interviewer had some concerns that V.T.'s adoptive father (i.e., E.L.'s father) might have talked to her about changing her initial disclosure and that V.T. might not have recalled his coaching until later in the interview. Yet, she was unable to offer any concrete evidence to that effect. She testified that V.T. refused to answer questions

about what her adoptive father had told her before coming to the interview. Moreover, the interviewer acknowledged that she had only had "some" training on coaching.

{¶27} As noted, the trial court ultimately concluded that none of V.T.'s advocacy center statements were elicited for the purpose of medical diagnosis or treatment. The court called much attention to the fact that the forensic interviewer who met with V.T. had extremely limited experience, failed to discuss any of her training in detail, and, when interviewing V.T., failed to follow protocol and caution V.T. about the need to tell the truth. Though the interviewer referenced members of a multi-disciplinary team at the center, the court stressed that there was no evidence any of those other members had contact with V.T. or that any "treatment either of a medical or psychological form ever took place whatsoever." The court described the role of the interviewer in this situation as that of a parrot; merely repeating what V.T. had said to members of law enforcement. Moreover, the court noted that V.T. had documented emotional difficulties and a history of making outrageous statements. She also quickly retracted the statements she made about E.L. during her interview, citing the need to tell the truth. For all of the foregoing reasons, the court refused to admit her statements under Evid.R. 803(4).

{¶28} Under these particular facts and circumstances, we cannot conclude that the trial court went so far as to abuse its discretion when it refused to admit V.T.'s statements. As the proponent of the statements, the State bore the burden of proving that they were elicited for the primary purpose of medical diagnosis or treatment. *See State v. Stover*, 9th Dist. Wayne No. 13CA0035, 2014-Ohio-2572, ¶ 12 (proponent of hearsay bears the burden of proving that it satisfies the applicable exception). Yet, the State offered little testimony to that effect. The forensic interviewer did testify that, *in general*, a part of the reason she interviews children is for the purpose of medical diagnosis/treatment. It was her testimony that, *in general*, she serves that

purpose by providing information to the advocacy center's nurse practitioner and/or social worker to aid in their interactions with the child. There was no evidence, however, that she elicited statements *from V.T.* for the primary purpose of treatment/diagnosis. The State offered no evidence that V.T. met with the social worker, and the forensic interviewer confirmed that the center's nurse practitioner had no involvement in this case. The interviewer also failed to offer any explanation as to how the questions she asked V.T. or the responses V.T. gave might be used to help secure treatment for her. *See Walters*, 2018-Ohio-1175, at ¶ 33, citing *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, at ¶ 49 (primary purpose determination includes consideration of the manner in which the child was questioned).

{¶29} The record reflects that V.T. was not consistent in her statements, as she retracted the allegations she made against E.L. shortly after having made them. *See In re I.W.*, 2008-Ohio-2492, at ¶ 15, quoting *Muttart* at ¶ 49. It further reflects that V.T. made those statements before the forensic interviewer discussed the rules for their interview. The interviewer admitted that she did not follow her usual protocol while conducting V.T.'s interview and began questioning her about E.L. before addressing with her the importance of telling the truth. *See In re I.W.* at ¶ 15, quoting *Muttart* at ¶ 49. Moreover, there was evidence that V.T. "regularly made spontaneous outrageous statements," suffered from behavioral issues, and had been overheard repeating sexually explicit lyrics. Given the foregoing, it was not unreasonable for the trial court to have concerns regarding V.T.'s ability to understand the need to tell the truth. *See Walters* at ¶ 33, quoting *Muttart* at ¶ 49.

{¶30} As previously noted, this Court only may review a trial court's evidentiary determinations for an abuse of discretion and may not substitute its own judgment for that of the trial court. *See Weaver*, 2018-Ohio-2998, at ¶ 10. Under these particular facts and

circumstances, we cannot conclude that the trial court abused its discretion when it found that the State failed to meet its burden under Evid.R. 803(4). Accordingly, we reject the State's argument that the court erred by excluding V.T.'s out-of-court statements. The State's sole assignment of error is overruled.

### III.

**{¶31}** The State's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
DISSENTING.

{¶32} I respectfully dissent from the judgment of the majority, as I would conclude that the trial court abused its discretion in concluding that none of V.T.'s statements were admissible pursuant to Evid.R. 803(4) as statements made for the purpose of medical diagnosis or treatment.

{¶33} First it is important to note that the trial court's analysis of the Evid.R. 803(4) issue was cursory at best. The trial court did not set forth the standard for reviewing whether statements are for the purpose of medical diagnosis or treatment, nor did it discuss the factors that are taken into account in making such a determination. In fact, much of the trial court's analysis focused on its belief that the forensic examiner's qualifications were lacking, despite the fact that it does not appear that the issue was raised at the hearing and there was testimony indicating that anyone who had completed the forensic examiner's training would be authorized to conduct forensic interviews of children. The remainder of the trial court's analysis was largely focused on considering Evid.R. 807 and its standards, which are much different than the considerations involved in an Evid.R. 803(4) analysis. *See* Evid.R. 807; Evid.R. 803(4); *State v. Walters*, 9th Dist. Summit No. 28582, 2018-Ohio-1175, ¶ 33. Given the differences, I share the State's concern that the trial court failed to apply the appropriate standard.

{¶34} Notably, in order for a statement to comply with Evid.R. 807, particular elements must be satisfied. *See* Evid.R. 807. Whereas examinations involving Evid.R. 803(4) encompass a determination of whether the purpose of the statement was for medical diagnosis or treatment, *see State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 46, which in turn requires a

*consideration* of certain factors. *See id.* at ¶ 49. That consideration "will depend on the facts of the particular case." *Id.* Moreover, for a statement to be admissible under Evid.R. 807, the rule "requires a threshold demonstration of reliability." *Id.* at ¶ 38. Whereas, "a fundamental assumption underlying the medical-treatment exception[, (Evid.R. 803(4)),] is that that particular hearsay is reliable." *Id.* at ¶ 39.

{¶35} In reviewing the transcript, I cannot conclude that the record supports the trial court's decision. The forensic interviewer testified that her role is to interview children and then provide that information to a multidisciplinary team consisting of social workers, a nurse practitioner, the case manager, the prosecutor's officer, and law enforcement. She averred that she "do[es] what [she] do[es] for medical diagnosis and/or treatment." Her role is not to determine whether what the child says happened actually occurred. While the forensic interviewer did testify that she deviated from her typical interview protocol in that she did not initially describe the rules to V.T., she explained that she did so because she was following what her training taught her, and that was to follow V.T.'s lead. V.T. began the interview by bringing up E.L. and that he was no longer in the home. Based on her training, the forensic interviewer asked V.T. questions related to that, which led to V.T.'s disclosure of abuse. While it is true that, midway through the interview, V.T. recanted her allegation, it is irrelevant in determining whether the statements were made for the purpose of medical diagnosis or treatment. It would be the role of the trier of fact to determine which statement was more credible.

{¶36} Nothing in the transcript suggests that the forensic interviewer asked leading questions or inappropriately prompted V.T. In fact, the forensic interviewer stressed that she mainly asks open-ended questions "because it allows the child to answer in any way that [the child] wishes." The testimony also indicated that the forensic interviewer relayed what she

learned from V.T. at the multidisciplinary team meeting and that it is the practice of the forensic interviewer to make a copy of the interview for the social worker and law enforcement. The fact that there is no discussion of treatment or even of a diagnosis in the transcript does not answer the question of whether the *purpose* of V.T.'s statement was for medical diagnosis or treatment. After considering all of the evidence, I would conclude the trial court abused its discretion in determining that none of V.T.'s statements were for the purpose of medical diagnosis or treatment.

APPEARANCES:

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellant.

RONALD SCOTT SPEARS, Attorney at Law, for Appellee.