[Cite as *In re I.R.*, 2023-Ohio-3044.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: I.R.
      S.R.
      V.R.

C.A. Nos.    30500
                 30501
                 30502
                 30529
                 30530
                 30531

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 07 0526
                 DN 21 07 0527
                 DN 21 07 0528

DECISION AND JOURNAL ENTRY

Dated: August 30, 2023

HENSAL, Judge.

{¶1} Appellants, A.R. ("Mother") and W.R. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed three of their minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are married and are the parents of I.R., born September 1, 2019; S.R., born September 28, 2015; and V.R., born October 30, 2014. They have two younger children who were also removed from their custody but are not parties to this appeal.

{¶3} CSB filed its original dependency complaints concerning these children on July 9, 2021. The agency had received a referral that the children were living in an unsafe and unsanitary home, had poor hygiene, and were not being regularly fed. Upon investigation, a CSB intake worker was able to speak to the older two children and Mother but was not allowed inside the family home. V.R. disclosed to the caseworker that Father "had touched her private part," but Father would not allow the caseworker or anyone else to question the child further.

{¶4} The juvenile court granted CSB an order of access to the family home and ordered that the children be removed from the parents' custody and placed in the emergency temporary custody of CSB. CSB twice amended its complaints to allege more details about the unsafe and unsanitary condition of the home, and to add further disclosures by both V.R. and S.R. that Father had sexually abused them. Through amended complaints filed in August 2021, CSB alleged that all three children were abused under Revised Code Section 2151.031(B), neglected under Section 2151.03(A)(2) and (3), and dependent under Section 2151.04(C).

{¶5} The August amended complaints also alleged that V.R. and S.R. were abused under Revised Code Section 2151.031(A) and (D). Section 2151.031(A), which is quoted in the amended complaint, explicitly requires that a child be "the victim of 'sexual activity' as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child[.]" Pertaining to the allegations of sexual abuse of V.R. and S.R., the August complaints included the following factual allegations:

> On August 9, 2021[, CSB] received new intake reports with concerns of sexual abuse. It was alleged that Father has sexually abused [V.R.] and [S.R.], with allegations of [F]ather touching the children's private parts and description of ejaculation. Mother also has allegedly participated in the sexual abuse. The children were evaluated at the Akron Children's Hospital CARE Center on August 25, 2021. [V.R.'s] disclosures were found to be consistent with a diagnosis of child

sexual abuse. There is a criminal investigation underway with the Akron Police Department. The Juvenile Court has suspended the parents' visitation.

{¶6} The matter came before a magistrate for an adjudicatory hearing. Mother and Father appeared and were represented by trial counsel. At the hearing, each parent executed a written waiver of trial rights and "admit[ted] to" the allegations in the second amended complaint. The magistrate questioned each of them to ascertain that their waivers had been executed knowingly, voluntarily, and intelligently. Consequently, the trial court adjudicated the children abused, neglected, and dependent as alleged in the August amended complaints.

{¶7} The parents also appeared with their respective trial counsel on the date set for the dispositional hearing and waived their rights to a contested hearing. With the parents' agreement, the trial court placed the children in the temporary custody of CSB and adopted the case plan as an order of the court. Among other things, the case plan required the parents to obtain mental health assessments, engage in recommended counseling, and resolve the problems with the condition of their home.

{¶8} After the adjudication and initial disposition of the children, V.R. and S.R. obtained more detailed trauma assessments at Lighthouse Family Center. The assessor opined that V.R.'s disclosures were consistent with sexual abuse but that S.R.'s disclosures, likely because of her younger age and developmental delays, had been less consistent. Without objection from either parent, the trial court adopted an amended case plan, which added trauma counseling for both children and required Father to obtain a sexual offender evaluation and follow all treatment recommendations.

{¶9} Throughout this case, Mother and Father refused to communicate with CSB, except through their court-appointed counsel. Apparently, their trial counsel made an informal agreement with the first caseworker to speak to the parents only with their counsel present, but no such

agreement is reflected in the record. Moreover, the first caseworker explained that she had difficulty coordinating communications through counsel and the second caseworker was not aware of any agreement. Nevertheless, aside from some last-minute counseling by Mother, neither parent engaged in case plan services. Because their visitation was suspended shortly after this case began, Father did not visit the children during this case and Mother was permitted to have only minimal contact with the children via Zoom.

{¶10} The parents did provide CSB with the names and contact information of relatives who were interested in placement of some of the children: a maternal aunt ("Aunt") and the maternal grandparents ("Grandparents"). Because Aunt and Grandparents lived in Pennsylvania, CSB was required to reach out to the children services agency there through the Interstate Compact for the Placement of Children ("ICPC") to investigate those relatives for potential placement. Ultimately, ICPC home studies approved Aunt for placement, but not Grandparents. Aunt, however, was willing to take custody of only S.R. and one of the parents' younger children, W.R., and visited the children only twice during this case.

{¶11} On June 13, 2022, CSB moved for permanent custody of I.R., S.R., V.R., and W.R. The parents alternatively moved for S.R. and W.R. to be placed in the legal custody of Aunt and for I.R. and V.R. to be placed in the legal custody of Grandparents or, alternatively, for temporary custody to be extended for six months to allow Grandparents time to appeal the denial of their ICPC assessment or for Mother to have more time to work toward reunification.

{¶12} Following an evidentiary hearing on the competing dispositional motions, the trial court terminated parental rights and placed I.R., S.R., and V.R. in the permanent custody of CSB. The trial court continued W.R. in the temporary custody of CSB, to allow more time for CSB to pursue placement of him with Aunt in Pennsylvania.

**{¶13}** The parents timely appeal and raise a total of six assignments of error. This Court will consolidate and rearrange some of their assigned errors to facilitate review.

II.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF CARRIE SCHNIRRING REGARDING THE HEARSAY STATEMENTS OF S.R. AND V.R. WHEN THOSE STATEMENTS DID NOT FIT WITHIN ANY RECOGNIZED HEARSAY EXCEPTION.

### FATHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ADMITTING THE STATEMENTS OF TWO MINOR CHILDREN IN [VIOLATION] OF EVIDENCE RULES 803 AND 807.

**{¶14}** Mother's second assignment of error and Father's fourth assignment of error challenge the trial court's admission of statements that V.R. and S.R. made to Carrie Schnirring during their psychological assessments at Lighthouse Family Center. The parents maintain that the children's statements were inadmissible hearsay. This Court recognizes that the trial court's decision to admit this evidence was within its sound discretion and will not reverse that decision unless the trial court abused its discretion. *In re S.S.*, 9th Dist. Wayne No. 21AP0022, 2023-Ohio-245, ¶ 36. An abuse of discretion means more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶15}** Mother and Father primarily argue that the children's statements were not admissible under Evidence Rule 807(A), which pertains to statements made by a child under the age of 12 that describe sexual activity perpetrated against the child. This Court has repeatedly held, however, that a party seeking to admit a young child's statements about sexual abuse "'need not satisfy the rigors of [Evidence Rule] 807(A) if [a] child's statement can be admitted through a

different hearsay exception.'" *In re E.L.*, 9th Dist. Medina No. 18CA0060-M, 2019-Ohio-1490, ¶ 8, quoting *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 20.

**{¶16}** The trial court did not admit these statements under Rule 807, however. Instead, it concluded that the statements were admissible under Evidence Rule 803(4) as statements made for purposes of their mental health diagnoses or treatment. *See State v. Brown*, 9th Dist. Summit No. 25287, 2011-Ohio-1041, ¶ 32; *Browning v. Burt*, 66 Ohio St.3d 544, 557 (1993), citing Black's Law Dictionary (6 Ed.1990), 453-454 and 1502 (interpreting the terms "medical diagnosis" and "treatment" in a different context as "terms of art * * * relating to the identification and alleviation of a physical or mental illness, disease, or defect.")

**{¶17}** Evidence Rule 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment" including medical history, past or present symptoms, pain, or sensations "are not excluded by the hearsay rule, even though the declarant is available as a witness[.]" The parents assert that the statements made by V.R. and S.R. to Ms. Schnirring were not made for purposes of diagnosis or treatment, but they fail to develop arguments based on Ohio law.

**{¶18}** In *In re J.B.*, 9th Dist. Lorain No. 18CA011424, 2019-Ohio-1929, ¶ 10, this Court summarized Ohio case law interpreting the admissibility of evidence under Rule 803(4):

> [T]he only issue relevant to the admission of a child's statements pursuant to [Rule] 803(4) is whether the statements were made for purposes of medical diagnosis or treatment. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 46. The high court set out a nonexhaustive list of considerations to determine the purpose of the child's statements, including (1) whether the child's statements were elicited in a leading or suggestive manner; (2) whether a motive to lie exists, e.g., in relation to a "bitter custody battle[;]" and (3) whether the child understood the need to be truthful to the medical provider. *Id*. at ¶ 49, quoting *State v. Dever*, 64 Ohio St.3d 401, 410 (1992). Other contextual considerations include the child's age, the consistency of the child's assertions, and whether the interview of the child was conducted pursuant to proper protocol. *Id*.

Neither parent has argued that the statements of V.R. and S.R. during their psychological assessments failed to satisfy the above standard for admissibility.

{¶19} The evidence at issue is the testimony of Ms. Schnirring, the professional who evaluated each child at Lighthouse, as well as the lengthy written reports about her assessment of each child. Ms. Schnirring testified about her years of experience and training and that she has performed "[w]ell over 2,500" psychological assessments of children alleged to have been the victims of sexual abuse. Without objection from any of the parties, the trial court qualified her to testify as an expert in the field of child sexual abuse and trauma. Ms. Schnirring's written reports include a detailed description of her separate assessment of each child, which occurred over a series of four meetings.

{¶20} The written reports and Ms. Schnirring's testimony include mental health diagnoses for each child and explain how the assessments were performed in anticipation of the children engaging in ongoing counseling. In addition to first assessing the ability of each young child to tell the truth, Ms. Schnirring explained her interview protocol, which included allowing the children to first make unprompted disclosures of sexual touching and later refer to anatomical drawings. Ms. Schnirring concluded that S.R.'s disclosures were not reliable because they were inconsistent and were likely hampered by her younger age and developmental delays.

{¶21} Ms. Schnirring's written report about V.R.'s evaluation, on the other hand, included the child's descriptive and consistent disclosures about multiple incidents of sexual abuse by Father at the family home and at a relative's home in Pennsylvania. The report includes V.R.'s description of Father's male genitalia, sexual acts that he required her to perform on him, and his repeated acts of ejaculating (which she described as "pee[ing]") on her body and in her mouth.

V.R. told Ms. Schnirring that Father would give her Kool Aid after he "pee[d]" in her mouth because he knew that the "pee" tasted bad.

{¶22} Ms. Schnirring concluded that V.R.'s disclosures were consistent with sexual abuse because her descriptions of the incidents were "detailed, specific, and compelling" and demonstrated "advanced sexual knowledge despite her young age." Although Ms. Schnirring accepted V.R.'s detailed disclosures but was reluctant to believe S.R.'s inconsistent disclosures, she recommended that both girls engage in ongoing trauma therapy. The record reflects that the case plan was amended shortly afterward to add trauma counseling for both children.

{¶23} Mother and Father have failed to demonstrate that the trial court abused its discretion by admitting the children's statements to Ms. Schnirring as statements made for the purpose of medical diagnosis or treatment under Rule 803(4). Mother's second and Father's fourth assignments of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT DENIED THE PARENTS THEIR DUE-PROCESS RIGHTS GUARANTEED TO THEM BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶24} Father's second assignment of error, as stated, is that both parents were deprived of their constitutional rights to due process. Assuming, without deciding, that Father has standing to raise a constitutional argument on behalf of Mother and himself, he raised no constitutional argument in the trial court and has not argued plain error on appeal. Moreover, Father has failed to articulate how either parent was deprived of due process in this case. Father implicitly argues that he was deprived of an opportunity to defend himself against the allegations that he sexually abused V.R. and S.R., but that argument is not supported by the record in this case.

{¶25} To begin with, Father and Mother had the opportunity to contest the sexual abuse allegations in the amended complaints but chose to waive those rights, in consultation with their trial counsel. Had the parents exercised their rights to a contested adjudicatory hearing, CSB would have been required to prove, by clear and convincing evidence, that both children were "the victim[s] of 'sexual activity' as defined under Chapter 2907. of the Revised Code[.]" R.C. 2151.031(A); *In re C.G.*, 9th Dist. Summit No. 29171, 2019-Ohio-2102, ¶ 21 (emphasizing that the agency must prove the allegations of dependency, neglect, or abuse by clear and convincing evidence).

{¶26} On the date set for the adjudicatory hearing, both parents executed written and oral waivers of their rights to a hearing and agreed to S.R. and V.R. being adjudicated abused under Section 2151.031(A). Among other things, the written waiver forms explicitly state that the parents admitted to the allegations in the complaint and waived their rights to require that CSB prove its allegations by clear and convincing evidence. The magistrate questioned the parents to ascertain that their waivers of trial rights had been executed in a knowing, voluntary, and intelligent manner. The trial court adopted the magistrate's adjudicatory decision and neither parent filed any objections.

{¶27} Later, CSB filed an amended case plan to require that Father obtain a sexual offender assessment and follow all treatment recommendations. Father asserts that he was again denied due process at this point because, had he complied with this case plan requirement, he would have been forced to admit that he abused the girls. Father had the statutory right to file an objection to the amended case plan, however, but he did not. *See* R.C. 2151.412(F)(2) (providing each party with the opportunity to propose amendments to the case plan and/or object to and

request a hearing on any case plan amendment proposed by another party). The trial court did not adopt the amended case plan as a court order until after the time for objections had expired.

{¶28} Mother and Father later had the opportunity to defend against CSB's motion for permanent custody through the final evidentiary hearing, and then to raise any alleged errors in the trial court proceedings through this appeal. Both parents were provided with numerous procedural safeguards to protect their fundamental parental rights. The record fails to support Father's claim that he or Mother were denied due process in this case. Father's second assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN ITS GRANT OF PERMANENT CUSTODY TO [CSB] AS SUCH DECISION WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO [CSB][AS THE JUDGMENT] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR III

[CSB] DID NOT MAKE REASONABLE EFFORTS TO FINALIZE A PERMANENCY PLAN FOR THE CHILDREN AND THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING A SIX-MONTH EXTENSION [OF TEMPORARY CUSTODY] AS [CSB] DID NOT SERIOUSLY CONSIDER PLACEMENT WITH FAMILY MEMBERS.

{¶29} Finally, having overruled the parents' assignments of error alleging procedural and evidentiary errors, this Court turns to their arguments that the trial court's decision on the merits was not supported by the evidence presented at the permanent custody hearing. Although Father's third assignment of error is stated as a "reasonable efforts" argument, he essentially argues that the trial court erred in granting CSB's motion for permanent custody because the agency failed to fully

investigate Aunt and/or Grandparents as potential legal custodians for the children. The record reveals, however, that CSB and the trial court did fully consider these relatives as potential legal custodians, which will be addressed in more detail below.

{¶30} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶31} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶32} The trial court found that the first prong of the permanent custody test was satisfied in this case for alternative reasons, including the grounds set forth in R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(1). Those provisions together provide that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[]" if the trial court finds, by clear and convincing evidence, that "[f]ollowing the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." The parents do not dispute this finding, which is fully supported by the record.

{¶33} The parents challenge the trial court's finding that permanent custody was in the best interest of the children. They do not dispute the trial court's conclusion that the children should not have been returned to their custody at the time of the hearing or in the foreseeable future. Instead, they argue that the trial court should have placed the children in the legal custody of Aunt and/or Grandparents. The evidence at the hearing demonstrated, however, that only Aunt was approved after an ICPC investigation. Because Grandparents had not been approved for placement at the time of the hearing, the trial court could not place the children in their legal custody. *See* R.C. 5103.23, Article III(D). Moreover, as to the request that the trial court extend temporary custody to allow time for Grandparents to appeal the denial of the ICPC assessment, there was no evidence presented at the hearing about why Grandparents were not approved, whether they had actually appealed the denial, and/or the likelihood that they could prevail on an appeal of the denial.

{¶34} Although Aunt had been approved as a relative placement through the ICPC investigation, she was willing to take custody of S.R., but not I.R. or V.R. The guardian ad litem opined that S.R. and I.R. were closely bonded and it was not in their best interest to separate them.

Aunt also had not developed a close bond with any of the children, as she had visited them only two times during this case.

{¶35} Moreover, this Court has held "that if permanent custody is in the best interest of the child, legal custody to a relative necessarily is not." *In re M.S.*, 9th Dist. Summit Nos. 30506 and 30515, 2023-Ohio-1558, ¶ 26. Consequently, this Court will review the trial court's decision that permanent custody was in the best interest of the children. This Court's best interest review focuses on the best interest factors set forth in R.C. 2151.414(D). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.[1] R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶36} The parents have not developed an argument under the best interest factors. Instead, they assert that the trial court should have placed the children with relatives because they are blood relatives. Aside from evidence that only Aunt had been approved for placements, and she was willing to take S.R., but not the other two children, the determination about the children's best interest required the trial court to consider whether it was in the best interest of the children for their parents to maintain residual parental rights. *In re M.S.*, 9th Dist. Summit No. 30506, 2023-Ohio-1558, ¶ 28.

{¶37} The parents in this case do not argue that their residual parental rights or this family relationship should be preserved, nor do they dispute "that they failed to work on the case plan to

---

[1] The trial court did not find that any of those provisions applied to the facts of this case.

demonstrate that they wanted to preserve their family." *Id*. Mother and Father had almost no contact with their young children throughout this case and did not even begin to address the significant problem of Father's admitted past sexual abuse of V.R. and S.R. "If the parents have made minimal effort to improve their parenting abilities and/or [maintain] a relationship with their [children], the trial court should consider that evidence in determining whether there is a family relationship that should be preserved. *Id*. at ¶ 27, citing *In re C.M.*, 2003-Ohio-5040, at ¶ 11.

{¶38} Any preservation of residual parental rights in this case would necessarily require assurances that the children would be protected from their parents, who had made no effort to address the potential threat that they pose to their children. No evidence was presented to the trial court that the proposed custodians would be able to protect the children from their parents or that they understood the trauma that V.R. and S.R. had endured.

{¶39} The children's interaction with their biological relatives during this case had been minimal. The remaining best interest factors (the children's wishes, their custodial history, and their need for legal permanence) also weighed in favor of permanent custody. S.R. and V.R. have expressed fear of Father, who still resided with Mother, and that they do not want to go home to their parents. The children's custodial history during this case included moving between temporary placements. S.R. and V.R. will need ongoing trauma counseling and assurances from their caregivers that they reside in a safe and stable home. The foster parents of S.R. and I.R. are interested in adopting them, but not V.R. Nevertheless, CSB will attempt to place the three children together in the same adoptive home. At a minimum, the foster parents who want to adopt S.R. and I.R. expressed a willingness to maintain ongoing contact between the siblings.

**{¶40}** Given the evidence before the trial court, this Court cannot conclude that it lost its way in determining that permanent custody to CSB was in the children's best interest. Mother's first and Father's first and third assignments of error are overruled.

III.

**{¶35}** Mother's and Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SUTTON, P. J.
STEVENSON, J.
CONCUR.

<u>APPEARANCES:</u>

THOMAS C. LOEPP, Attorney at Law, for Appellant.

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.