[Cite as *State v. South*, 2014-Ohio-374.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

EDWARD A. SOUTH

    Appellant

C.A. No.     26967

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 13 01 0081

DECISION AND JOURNAL ENTRY

Dated: February 5, 2014

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Edward South, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2}    Shortly before 10:00 p.m. on December 26, 2012, Brittany Washburn heard a loud crash outside her house. The crash was the result of a car hitting a pole on the opposite side of the street. Washburn called 911 to report the accident in case anyone was injured. Before the police arrived, however, Washburn observed someone exit the car, walk to the back of the car, bend over at the back of the car for a brief period, and walk away. Washburn believed that the person had the car's license plate in his hand as he walked away. Washburn then called 911 again to tell the operator that the person in the accident had left the scene. Washburn's second call was received at 9:58 p.m.

{¶3} When the police arrived on scene, a canine unit was able to track footprints in the snow to a nearby home. The police discovered that South lived at the house with his daughter and entered the home with her permission. As the officers walked down to the basement where South stayed, they observed a license plate propped up against the wall leading into the basement. They then spoke with South. Officer Mickey Snyder testified that he could smell the odor of alcohol as he spoke with South, but that South refused to answer any questions. He also refused to undergo field sobriety testing. The police arrested South and placed him in the cruiser. South entered the cruiser at 10:17 p.m., just about twenty minutes after he walked away from the scene of the accident.

{¶4} Once the police arrived back at the station with South, he consented to a breathalyzer test. The breathalyzer test took place at 11:18 p.m. The test results indicated that South had a blood alcohol concentration ("BAC") of .087. The police also discovered that South had multiple prior OVI convictions and a suspended driver's license.

{¶5} A grand jury indicted South on the following counts: (1) operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a); (2) OVI, in violation of R.C. 4511.19(A)(1)(d); (3) driving under suspension, in violation of R.C. 4510.11; and (4) failure to control, in violation of R.C. 4511.202. The first OVI count also contained an attendant specification based on South's previously having been convicted of five or more OVI offenses within the last twenty years, in violation of R.C. 2941.1413. The matter proceeded to trial, and a jury found South guilty on the two OVI counts, the specification, and the driving under suspension count. The court then found South guilty on the failure to control count, a minor misdemeanor. The court merged the two OVI counts for purposes of sentencing and sentenced South to a total of eight years in prison.

**{¶6}** South now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

APPELLANT'S COUNSEL WAS INEFFECTIVE BY FAILING TO LITIGATE, PRIOR TO TRIAL, THE ADMISSIBILITY OF THE BAC DATAMASTER RESULTS AND THUS APPELLANT WAS DENIED EFFECTIVE COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT.

**{¶7}** In his first assignment of error, South argues that he received ineffective assistance of counsel because his counsel failed to seek the suppression of the BAC results the State introduced. We disagree.

**{¶8}** To prove an ineffective assistance claim, South must show two things: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, South must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691. Furthermore, this Court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

**{¶9}** The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." (Alteration omitted.) *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "However, the failure to file a

motion to suppress which possibly could have been granted and implicated matters critical to the defense can constitute ineffective assistance of counsel, if such failure prejudices the defendant." *State v. Pitts*, 9th Dist. Summit No. 20976, 2002-Ohio-6291, ¶ 88. "In order to demonstrate that trial counsel's performance was deficient, a defendant must establish that a valid basis existed to suppress the evidence." *State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 9.

{¶10} Officer Mickey Snyder testified that he performed a breathalyzer test on South at 11:18 p.m., approximately 80 minutes after South was seen walking away from his car. Officer Snyder administered the test using the BAC Datamaster and testified that, for the past 16 years, he has been certified by the Ohio Department of Health to administer that test. Officer Snyder testified that the BAC Datamaster self-calibrates before and after every test, but that the police department also performs "an additional calibration and solution at least once every seven days." When South took the breathalyzer test, the test results indicated that he had a BAC of .087. Officer Snyder testified that the legal limit in Ohio is .08.

{¶11} On defense counsel's cross-examination of Officer Snyder, the following exchange took place:

> [DEFENSE COUNSEL:] So, Mr. South blew 7/1000 over the limit stated by law?
>
> [OFFICER SNYDER:] According to the machine, yes, sir.
>
> [DEFENSE COUNSEL:] Does the machine have a fudge factor in it?
>
> [OFFICER SNYDER:] It's part of it, its internal standard check, it's got to be within – I forget the exact percentage, but it's like 003.
>
> [DEFENSE COUNSEL:] 3, okay. So, 3/1000?
>
> [OFFICER SNYDER:] Yes.

Snyder argues that, had his counsel filed a motion to suppress, he could have explored whether the BAC Datamaster was properly calibrated and challenged the accuracy of the test results.

According to Snyder, "[a] hearing on a motion to suppress could have been used to flesh out the impact this [.003] plus or minus factor had as it relates to the time of the consumption of the alcohol, and whether or not this error factor had any relevance at all to this case."

{¶12} Officer Snyder specifically testified that the BAC Datamaster is incapable of determining exactly when a person drank or how much they drank. He testified that BAC varies from person to person and is affected by a variety of factors such as whether a person has eaten, whether the person regularly drinks, and the type of alcohol at issue. He admitted that he did not know when South had consumed alcohol or how much alcohol he had consumed. He testified, however, that the .087 result he received when he performed South's test was an accurate result and that the BAC Datamaster was regularly calibrated for accuracy. When asked what he would do if he ever performed a breathalyzer test that resulted in a .08 result, he testified that "[he] would charge the person with prohibitive BAC."

{¶13} South has not shown that his counsel was ineffective for failing to file a motion to suppress. Officer Snyder never testified that the "internal standard check" the BAC Datamaster uses to self-calibrate means that the results that issue from the machine are inaccurate. In fact, he testified that he would charge someone with a prohibitive BAC if the BAC Datamaster indicated that the person had a concentration of exactly the legal limit. Officer Snyder specifically testified that the BAC Datamaster self-calibrates and also undergoes weekly maintenance at the police department. There is nothing in the record to even suggest the BAC Datamaster was improperly calibrated. Moreover, even if an error rate of .003 was applied to South's BAC result, his BAC would have been .084; a concentration still in excess of the legal limit.

{¶14} To the extent South claims that a suppression hearing could have fleshed out the issue of how his BAC result "relate[d] to the time of the consumption of the alcohol," Officer Snyder explained that BAC results cannot pinpoint exactly when someone drank or how much they drank. He averred that BAC is affected by a variety of factors and varies from person to person. He also admitted that he did not know when South had been drinking; only that South had a prohibitive BAC at the time he administered the test. In light of Officer Snyder's testimony, it is not clear to this Court how a suppression hearing would have allowed South to gain any additional information about how his BAC result "relate[d] to the time of the [alcohol] consumption."

{¶15} South denied having consumed any alcohol prior to striking the pole. According to South, he had a drink to calm his nerves after he walked home from the crash. The issue regarding exactly when South had consumed alcohol (i.e., whether he drank it before or after the crash) was simply a matter of credibility for the trier of fact to determine. *See State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 7 (suppression argument rejected where argument "attack[ed] the weight, not the admissibility of the evidence"). South has not established that his counsel was ineffective for failing to file a motion to suppress. His first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

THE SENTENCE IMPOSED BY THE TRIAL COURT IN THIS CASE IS UNREASONABLE AND AN ABUSE OF DISCRETION.

{¶16} In his second assignment of error, South argues that the trial court abused its discretion by sentencing him to eight years in prison. We do not address South's argument, as our review of the record evidences that his sentence is contrary to law.

{¶17}  South was convicted of a third-degree felony OVI as well as a specification under R.C. 2941.1413 for previously having been convicted of five or more OVI offenses within twenty years of his current offense.  His sentence, therefore, had to consist of a one to five year mandatory prison term on his specification.  R.C. 4511.19(G)(1)(e)(i).  Additionally, the court could impose a prison term on South's underlying OVI offense.  *Id.*; R.C. 2929.14(B)(4).  The mandatory prison term on the specification would be run "consecutively to and prior to the prison term imposed for the underlying offense."  R.C. 2929.13(G)(2).  The length of the prison term imposed on the underlying offense could be "of any duration specified in division (A)(3) of [R.C. 2929.14]."  R.C. 2929.14(B)(4).  South actually received a mandatory term of three years on his specification, as well as a five-year prison term on his underlying OVI offense.

{¶18}  Although Former R.C. 2929.14(A)(3) allowed for a prison term of one to five years on all third-degree felonies, the statute was amended effective September 30, 2011.  *See* Am.H.B. No. 86, 2011 Ohio Laws File 29.  The amended version of the statute, as well as the current version of the statute (effective September 28, 2012), bifurcates third-degree felonies into two subsets for purposes of sentencing.  *Compare* Former R.C. 2929.14(A)(3) *with* R.C. 2929.14(A)(3)(a)-(b).  Because the current version of R.C. 2929.14 is applicable here, South's third-degree OVI felony was subject to a maximum of 36 months in prison.  R.C. 2929.14(A)(3)(b).  By sentencing South to five years on his underlying OVI conviction, the court issued a sentence that was contrary to law.  *See State v. Vitt*, 9th Dist. Medina No. 11CA0071-M, 2012-Ohio-4438, ¶ 21 ("Although neither party raised this issue below or on appeal, we raise it *sua sponte* because [the appellant's] sentence * * * is contrary to law.").

{¶19}  "No court has the authority to impose a sentence that is contrary to law."  *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 23.  "R.C. 2953.08(G)(2) permits an appellate

court to 'increase, reduce, or otherwise modify a [felony] sentence that is appealed under this section' or to 'vacate the sentence and remand the matter to the sentencing court for resentencing' if the sentence is contrary to law." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 4. Because "[a] sentence is the sanction or combination of sanctions imposed for each separate, individual offense," a reviewing court can remand one offense, of a multiple-offense sentence, for resentencing without vacating the entire sentence. *Saxon* at paragraphs one, two, and three of syllabus.

**{¶20}** The portion of South's sentence related to his OVI conviction is contrary to law. Accordingly, we vacate the portion of South's sentence related to his OVI conviction and the specification linked to that conviction. *See id.* The other portions of South's sentence remain intact. *See Vitt* at ¶ 23. We remand this matter to the trial court for it to resentence South on his OVI conviction and specification so as to comply with the applicable sentencing guidelines outlined above. South's second assignment of error is sustained on that basis.

### III

**{¶21}** South's first assignment of error is overruled. His second assignment of error is sustained for the reasons set forth above. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

BETH WHITMORE
FOR THE COURT

 

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.