[Cite as *State v. Payne*, 2019-Ohio-4218.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 18CA011383 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MOSES A. PAYNE | OBERLIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 18TRC01014 |

DECISION AND JOURNAL ENTRY

Dated: October 15, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, Moses A. Payne, appeals from his conviction for operating a vehicle under the influence of alcohol ("OVI") in the Oberlin Municipal Court. This Court affirms.

I.

{¶2} Sergeant Timothy Hoffman of the Ohio State Highway Patrol encountered Mr. Payne when the latter was stranded in his vehicle on the side of the Ohio Turnpike around 2:00 A.M., purportedly out of gas. During their interaction, the sergeant noticed several indicators of possible impairment and suspected Mr. Payne was under the influence of alcohol. Mr. Payne claimed he was a Lyft driver who drove a client to Detroit and ran out of gas when he became lost on his way back to Cleveland. When asked about alcohol consumption, he offered varying accounts as to how many beers he drank in comparison to how many his Lyft client drank. He also told the sergeant he had only been on the side of the road for ten minutes, but later testified at trial he had been stranded for approximately one hour. Mr. Payne performed poorly on three

field sobriety tests, was arrested, and submitted to a breathalyzer test, which indicated that he had a blood alcohol content ("BAC") of .094.

{¶3} Mr. Payne was charged with two counts of OVI in violation of R.C. 4511.19(A)(1)(a) and (d). Following a bench trial, he was found not guilty of OVI under R.C. 4511.19(A)(1)(a), but guilty of OVI under R.C. 4511.19(A)(1)(d).

{¶4} Mr. Payne now appeals from his conviction and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

A CONVICTION FOR OPPERATING (SIC) A VEHICLE UNDER THE INFLUENCE IN VIOLATION OF O.R.C. 4511.19(A)(1)(d) WAS AGAISNT (SIC) THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} In his first assignment of error, Mr. Payne argues that his conviction was against the manifest weight of the evidence. We disagree.

{¶6} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily

against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶7}** Mr. Payne was convicted of OVI under R.C. 4511.19(A)(1)(d), which states: "No person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath." The offense was Mr. Payne's second OVI within the past ten years. *See* R.C. 4511.19(G)(1)(b).

**{¶8}** Sergeant Hoffman testified at trial that, on March 12, 2018, he was on patrol in Henrietta Township when he stopped on the Ohio Turnpike to assist a vehicle on the side of the road with its emergency hazard lights flashing. He testified that the sole occupant of the vehicle, Mr. Payne, exited from the driver's side the vehicle, walked toward him, and explained that he was a Lyft driver who was lost and out of gas. Mr. Payne said he was on his way back to Cleveland after dropping a client off in Detroit. He then accepted the sergeant's offer to drive him to the next service station for gas.

**{¶9}** The sergeant testified that he noticed an odor of alcohol coming from Mr. Payne's person when he patted him down for safety purposes before allowing him into his cruiser. He also noticed that Mr. Payne was slurring his words as he spoke. Mr. Payne told the sergeant he had only been there for about ten minutes. Sergeant Hoffman then inquired as to when Mr. Payne last drank alcohol. After viewing a video[1] of the incident during his testimony, the sergeant testified that Mr. Payne first claimed he drank two beers and his client drank one, and

---

[1] The video was viewed in open court during the sergeant's testimony, but was never entered into evidence and is consequently not contained in the record before us.

then claimed he only drank one beer and his client drank two. Mr. Payne told Sergeant Hoffman that two beer bottles were still in the vehicle. Mr. Payne agreed to submit to field sobriety testing, but performed poorly on all three tests. The sergeant testified that he observed four clues on the horizontal gaze nystagmus test, indicating an 80% probability that his BAC would be at least .10, and five clues on the walk and turn test, indicating a 93% probability that his BAC would be at least .10. Mr. Payne attempted, but could not complete, the one leg stand test; he put his foot down on the ground four separate times, and the sergeant terminated the test for safety reasons.

{¶10} Sergeant Hoffman testified that he believed Mr. Payne was under the influence of alcohol and placed him under arrest. An inventory search of the vehicle revealed an open six-pack of beer containing three unopened bottles. Mr. Payne was transported to the Lorain County Jail, where he submitted to a breathalyzer test. The test results indicated that Mr. Payne had a BAC of .094 at 3:21 A.M.

{¶11} Mr. Payne testified on his own behalf at trial and claimed he drove a Lyft client to Detroit that night. He testified that the client bought a bottle of liquor and a six-pack of Budweiser beer. According to Mr. Payne, they each drank one beer while in Detroit at about 11:15 or 11:20 P.M, with Mr. Payne "shotgun[ing]" his beer. The client let him keep the remaining four beers, but Mr. Payne claimed he did not drink any more beer because he does not drink and drive. Mr. Payne testified that he went to a nearby "Taco Bell or something[,]" ate one taco, and got back onto the freeway around 11:35 P.M. He became distracted during the trip home while listening to music and receiving a phone call, which consequently turned off his global positioning system ("GPS"). He testified that these factors led to him becoming lost and eventually running out of gas at around 1:10 A.M.

{¶12} Mr. Payne testified that he exited the vehicle and bounced up and down on the vehicle's back bumper to allow any remaining gas to splash over the fuel pump. Afterward, the car started again, but Mr. Payne was only able to drive it a distance of two feet. He tried bouncing on the bumper again, but was only able to drive the vehicle another two feet. He decided to just wait in his car until daylight before walking somewhere to get gas. He drank a second beer and tried to bounce on the bumper again, but the car would no longer start. He then re-entered the vehicle and drank a third beer. He testified that he exited the vehicle again to urinate and stretch his legs, and Sergeant Hoffman arrived sometime after 2:00 A.M. while he was still outside of the vehicle. Mr. Payne attempted to clarify his comment to the sergeant that he had only been there for ten minutes by testifying that he had only been standing outside of the vehicle for ten minutes, yet he was stranded on the side of the road for over an hour. He claimed he admitted to the sergeant at the scene that he drank two beers while on the side of the road.

{¶13} Mr. Payne focuses his manifest weight argument on the "operating" element of his OVI conviction. He first argues that the State could not prove he operated his vehicle, as it was rendered inoperable once it ran out of gas. The term "operate" means to cause or have caused movement of a vehicle. R.C. 4511.01(HHH). "The statute 'employs both the present tense ("to cause") and the past tense (to "have caused") in relation to the movement of a vehicle. The past tense indicates an action already completed.'" *State v. Wayman*, 12th Dist. Clermont Nos. CA2018-06-045 and CA2018-06-046, 2019-Ohio-1194, ¶ 18, quoting *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 16. Thus, the State was permitted to demonstrate that Mr. Payne operated his vehicle by offering direct or circumstantial evidence that he was either presently causing the vehicle to move or had caused it to move in the past. Nevertheless, Mr. Payne directs us to no authority supporting his speculative argument that a

vehicle which runs out of gas is per se inoperable for purposes of Chapter 4511. *See* App.R. 16(A)(7). *See also State v. Pesa*, 7th Dist. Mahoning No. 2000-C.A.-2, 2001 WL 1667874, *4 (Dec. 27, 2001) (stating the fact that a vehicle is presently out of gas, by itself, does not necessarily demonstrate that it is completely inoperable). We thus decline to unduly restrict the definition of "operate" under R.C. 4511.01(HHH) in the manner proposed by Mr. Payne.

**{¶14}** Mr. Payne next argues that the State failed to prove his BAC was over the legal limit during the time in which he was operating his vehicle. "Chronology is an important element in 'drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle." *Mentor v. Giordano*, 9 Ohio St.2d 140, 146 (1967). *See also State v. King*, 9th Dist. Medina No. 2833-M, 1999 WL 11240, *2 (Jan. 13, 1999). "In cases where the operability of the vehicle is disputed, the key issue is whether there was evidence that defendant drove or was in actual physical control of the vehicle while he had the requisite concentration of alcohol in his system." *Metroparks v. Pannent*, 8th Dist. Cuyahoga No. 74448, 1999 WL 754500, *3 (Sept. 23, 1999). The issue of whether the accused operated his vehicle while under the influence of alcohol is one for determination by the trier of fact. *See State v. Major*, 4th Dist. Highland No. 98 CA 04, 1999 WL 49104, *2 (Jan. 25, 1999).

**{¶15}** Mr. Payne contends that the trial court erred in finding he started his vehicle and moved it two feet after consuming his second and third beers. In its judgment entry, the court presents an enumerated list of "factual support" for its guilty verdict, which includes: "Mr. Payne admitted that *after each beer* he 'hopped on the bumper' then jumped in the vehicle and was able to move the vehicle a couple of feet each time." (Emphasis added.). This is indeed a slight misrepresentation of Mr. Payne's testimony, as he actually testified that he did not drink

his second beer until *after* twice bouncing on the bumper and moving the vehicle a distance of two feet each time. He then testified that he tried bouncing on the bumper a third time, but the car refused to start. He consumed his third beer thereafter.

{¶16} Mr. Payne also argues that the trial court impermissibly attempted to "gues[s]timate" his weight in determining that his BAC was above the legal limit when no such evidence was introduced. A trial court may not consider and rely on facts not in evidence. *See State v. McCreery*, 9th Dist. Summit No. 26417, 2012-Ohio-5656, ¶ 13. In its judgment entry, the trial court stated: "Mr. Payne appears to be approximately 170 pounds. The math according to almost every BAC chart does not support consumption of only 3 beers." Our review of the record reveals that Mr. Payne is correct, and no such evidence of his weight was ever introduced at trial. When combining the above arguments with an assertion that he was "only slightly above the limit," Mr. Payne argues that the State did not, and could not, prove that he operated his vehicle before his BAC exceeded the limit proscribed by law.

{¶17} Although Mr. Payne's challenges to the above "factual support" contained in the trial court's judgment entry bear some merit, a challenge to the manifest weight of the evidence nonetheless requires this Court to not just review selected portions of evidence in isolation, but to instead review the *entire* record. *See Otten* at 340. Notwithstanding the trial court's slight misrepresentation of Mr. Payne's testimony and its erroneous reference to Mr. Payne's estimated weight, our review of the entire record reveals ample evidence to support the trial court's ultimate conclusion that Mr. Payne operated his vehicle while under the influence of alcohol beyond a reasonable doubt. Much of the evidence adduced at trial indicating that Mr. Payne operated the vehicle while intoxicated was circumstantial in nature, but it is well-settled that "'[c]ircumstantial evidence and direct evidence inherently possess the same probative value.'"

*State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991).

{¶18} Mr. Payne admitted drinking one beer prior to driving his vehicle from Detroit to Cleveland. He also admitted drinking two more beers prior to his encounter with Sergeant Hoffman on the side of the road, albeit over a purported span of approximately one hour. The number of beers he claimed to have consumed changed while he spoke to Sergeant Hoffman that night. An open six-pack of beer containing three unopened bottles was later found in his vehicle. Although he claimed at trial to have been stranded for an hour and testified that he did not consume the additional beers until after he last operated his vehicle, the trial court was in no way required to believe Mr. Payne's proposed timeline of events from that night. *See Wayman* at ¶ 22. *See also State v. South*, 9th Dist. Summit No. 26967, 2014-Ohio-374, ¶ 15, *aff'd in part and rev'd in part on other grounds*, 144 Ohio St.3d 295, 2015-Ohio-3930 (stating the issue as to when the accused actually consumed alcohol is a matter of credibility to be determined by the trier of fact). The trial court, in fact, indicated its disbelief of Mr. Payne's testimony in its entry when it stated: "Even if Mr. Payne's testimony is believed * * *." It is well-established that "'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over

another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. Despite conflicting testimony as to how long Mr. Payne was stranded on the side of the road, the trial court was within its discretion to believe he was telling Sergeant Hoffman the truth when he said he had only been there for ten minutes. A six-pack of beer missing three beers was found in his vehicle and he admitted to drinking three beers that night, including his first beer at the start of his trip home. When considered in conjunction with his statement that he had only been stranded for ten minutes, a reasonable inference could be made that Mr. Payne drank those three beers either prior to leaving Detroit or during his drive back to Cleveland.

{¶19} Furthermore, undisputed breathalyzer test results were introduced showing that Mr. Payne had a BAC level of .094 at 3:21 A.M. "If the State intends to rely on a breathalyzer test as proof that a person violated [R.C. 4511.19(A)(1)(d)], the test must be performed 'within three hours of the time of the alleged violation.'" *State v. Henkel*, 9th Dist. Medina No. 14CA0079-M, 2015-Ohio-5040, ¶ 9, quoting R.C. 4511.19(D)(1)(b). The trial court explicitly recognized in its judgment entry that regardless of which version of events is believed whether Mr. Payne ceased operating his vehicle at 1:10 A.M. as he testified at trial, or whether it was sometime after 2:00 A.M., ten minutes before the police arrived the breathalyzer test results demonstrating that his BAC was over the legal limit were obtained within the three-hour timeframe required by R.C. 4511.19(D)(1)(b).

{¶20} When reviewing the entire record and weighing all of the evidence presented in this case along with all reasonable inferences, and in considering the credibility of the witnesses, we cannot conclude that the trial court, as trier of fact, clearly lost its way and created a manifest miscarriage of justice in this matter requiring a new trial. *See Otten* at 340. Mr. Payne has also

not shown this to be an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins* at 387.

**{¶21}** Accordingly, Mr. Payne's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

MR. PAYNE WAS DEPRIVED OF HIS CONSTITUTIONALLY GUARANTEED RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S DEFICIENT PERFORMANCE.

**{¶22}** In his second assignment of error, Mr. Payne asserts that his trial counsel was ineffective for failing to timely request a jury trial in writing, file a motion to suppress, and elaborate his reasons for, and later renew, his Crim.R. 29 motion. We disagree.

**{¶23}** "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶24} Although Mr. Payne makes a fleeting assertion that his trial counsel was ineffective for failing to timely request a jury trial in writing, he does not set forth any argument to support this claim, and we likewise decline make one on his behalf. *See* App.R. 16(A)(7); *In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 27 ("[I]t is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf.").

{¶25} Mr. Payne next claims that his trial counsel was ineffective for failing to file a motion to suppress. The failure to file a motion to suppress, however, does not constitute ineffective assistance of counsel per se. *See State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65; *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). In fact, such a decision may be considered a trial strategy. *State v. Greer*, 9th Dist. Summit No. 26470, 2013-Ohio-4267, ¶ 12. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *Brown* at ¶ 65. In order to show prejudice, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted. *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 7.

{¶26} In support of his claim, Mr. Payne notes that no one actually saw him driving, but he was instead discovered by police while stranded on the side of the road. He further asserts that Sergeant Hoffman's detection of the odor of alcohol and slurred speech indicated "minimal" signs of impairment, which did not warrant field sobriety testing. Thus, he concludes there is a strong possibility that a motion to suppress would have been granted in this case. We note that Mr. Payne was only convicted of a per se OVI violation under R.C. 4511.19(A)(1)(d) based on his operation of the vehicle and timely breathalyzer test results demonstrating that his BAC was over the legal limit. Yet, he fails to allege any substantial defects or errors in the breath-testing

procedures, claiming that such defects could be revealed only through examination of the testing officer at a hearing on a motion to suppress. *See State v. Talmon*, 9th Dist. Medina No. 1913, 1991 WL 11591, *2 (Jan. 30, 1991). We conclude that Mr. Payne has not demonstrated how a motion to suppress would have been successful in this case and further conclude that he has not demonstrated how he was prejudiced by counsel's decision not to file such a motion.

{¶27} Mr. Payne also argues that his trial counsel was ineffective for not elaborating his reasons for his Crim.R. 29 motion. We first note that a Crim.R. 29 motion is not required to preserve the issue of sufficiency for appeal. *State v. Good*, 9th Dist. Wayne Nos. 10CA0056 and 10CA0057, 2011-Ohio-5077, ¶ 26. The record here reflects that when counsel made his Crim.R. 29 motion for acquittal, the trial court asked if he would like expound, and counsel replied, "No, Your Honor." Mr. Payne directs us to no authority requiring counsel to offer or explain his reasons for making a Crim.R. 29 motion for acquittal. *See* App.R. 16(A)(7). We thus find no merit in this argument.

{¶28} Finally, Mr. Payne claims that his trial counsel was ineffective for failing to renew his Crim.R. 29 motion for acquittal. Although it is customary for the defense to renew a Crim.R. 29 motion at the close of its case, the failure to do so does not preclude this Court's review of whether a conviction is supported by sufficient evidence and thus does not constitute ineffective assistance of counsel. *See State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 25; *State v. Brooks*, 9th Dist. Medina No. 07CA0111-M, 2008-Ohio-3723, ¶ 43; *State v. Morris*, 9th Dist. Summit No. 22089, 2005-Ohio-1136, ¶ 98.

{¶29} Because Mr. Payne has not demonstrated any deficient performance by his trial counsel or shown any resulting prejudice, we find no merit in his ineffective assistance of counsel claims.

**{¶30}** Mr. Payne's second assignment of error is overruled.

III.

**{¶31}** Mr. Payne's first and second assignments of error are overruled. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JASON S. HARLESS, Attorney at Law, for Appellant.

FARAH L. EMEKA, Prosecuting Attorney, for Appellee.