[Cite as *State v. Peck*, 2021-Ohio-1685.]

STATE OF OHIO         )          IN THE COURT OF APPEALS
                         )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE   )

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 19AP0031 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRYAN PECK | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2018 CBC-1 000193 |

DECISION AND JOURNAL ENTRY

Dated: May 17, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, Bryan Peck, appeals from the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2} During the timeframe relevant to this appeal, Mr. Peck was the stepfather of W.S. He and W.S.'s mother lived in an apartment along with W.S. and her two brothers. Because the apartment had only one bedroom, the three children shared the bedroom while the adults slept in the dining room area. At the time, W.S. was five years old, her older brother was nine years old, and her younger brother was one year old.

{¶3} One afternoon, W.S. came out of her bedroom and indicated that she needed help with her television. Because her mother was washing the dishes, Mr. Peck volunteered to help and took W.S. back to her room. He remained with W.S. for a while before he returned to the kitchen in search of candy. The mother informed him that they had suckers, and Mr. Peck took some of

the suckers and left the room. Meanwhile, the mother continued to tend to the dishes and minded her one-year-old son. As she cleaned, she dropped some cereal into a bucket the one-year-old was carrying, and he left the kitchen with the bucket.

{¶4} When the mother finished tidying, she picked up a few toys and walked toward the children's bedroom. She was nearly there when Mr. Peck peeked out and appeared panicked. As she completed her approach, the mother saw Mr. Peck standing near the doorway, W.S. standing nearby him, and her one-year-old standing next to the television. Mr. Peck quickly shoved W.S. away, grabbed the one-year-old's bucket, and held it in front of his genitals. Yet, the mother was still able to see that he had an erection, which he had exposed by pulling up one leg of his shorts. The mother saw W.S. staring at Mr. Peck's erect penis and quickly asked her what had happened. W.S. quietly responded that Mr. Peck "made [her] suck his wiener" because "his wiener [was] a sucker." W.S. also stated that Mr. Peck would give her candy afterward and told her "not to tell anybody ever." Realizing that Mr. Peck was motioning to W.S. to be quiet, the mother repeatedly hit him until she forced him from the room.

{¶5} The mother contacted the police, and officers immediately responded to the apartment. Mr. Peck left with the officers and arrangements were made for W.S. to be taken to the child advocacy center the following day. That evening, she spoke with her mother several times and made statements indicating that Mr. Peck had sexually abused her before.

{¶6} The next day, W.S. spoke with an interviewer at the child advocacy center. She then met with a nurse examiner and submitted to a physical exam. Her first interview was recorded and many of the statements that she made therein also were included in a medical report that the nurse examiner completed. The nurse examiner completed her report based on her observation of

3

W.S.'s recorded interview, her own interview of W.S., and the physical examination she conducted.

{¶7} A grand jury indicted Mr. Peck on three counts of rape, three counts of sexual battery, and three counts of gross sexual imposition. One count of each type of crime related to the incident described herein. The remaining counts alleged that Mr. Peck had sexually assaulted W.S. during the preceding six months.

{¶8} Upon motion of Mr. Peck, the trial court conducted a competency hearing and determined that W.S. was not competent to testify. Mr. Peck then sought to exclude the statements W.S. had made at the child advocacy center, arguing that they were testimonial and not made for the purpose of medical diagnosis or treatment. The court reviewed W.S.'s recorded interview and agreed that it should not be admitted in its entirety. Yet, the court indicated that it would admit any statements W.S. had made therein for the purpose of medical diagnosis and treatment. The State, therefore, prepared to play a series of excerpts from the recorded interview at trial.

{¶9} Mr. Peck waived his right to a jury, and a bench trial ensued. The admission of W.S.'s recorded statements continued to be a topic of debate at trial, particularly after the nurse who examined her at the child advocacy center referred to the recorded interview as a forensic interview. Following the nurse's testimony, the court notified the parties that it was reconsidering the admissibility of W.S.'s recorded statements. The court noted that the nurse examiner had conducted her own interview and had prepared a medical report based on the information she had obtained from W.S. Over the State's objection, the court determined that it would only consider W.S.'s statements to the extent that the nurse examiner had included them in her medical report.

{¶10} The trial court found Mr. Peck guilty of one count of rape, one count of sexual battery, and one count of gross sexual imposition, all three of which pertained to the incident

described herein. The court found Mr. Peck not guilty of the remaining counts. The court merged Mr. Peck's three counts as allied offenses, and the State elected to proceed to sentencing on the rape count. The court sentenced Mr. Peck to fifteen years to life in prison on that count and classified him as a tier III sexual offender.

{¶11} Mr. Peck now appeals from the court's judgment and raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE EVIDENCE PRESENTED IN THIS CASE BY THE STATE WAS INSUFFICIENT TO ESTABLISH PROOF BEYOND A REASONABLE DOUBT AND AS SUCH, THE COURT ERRED IN DENYING MR. PECK'S MOTION FOR JUDGMENT FOR ACQUITTAL UNDER *RULE 29* OF THE *OHIO RULES OF CRIMINAL PROCEDURE*[.]**

{¶12} In his first assignment of error, Mr. Peck argues that his convictions are based on insufficient evidence. Specifically, he argues that the trial court ought to have granted his motion for acquittal, as there was insufficient evidence that he engaged in sexual conduct or contact with W.S. We do not agree.

{¶13} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Salupo*, 9th Dist. Lorain No. 07CA009233, 2008-Ohio-3721, ¶ 4, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶14} A person commits rape if he engages in sexual conduct with another who is not his spouse and who is under the age of thirteen. R.C. 2907.02(A)(1)(b). A person commits sexual battery if he engages in sexual conduct with another who is not his spouse and who is his stepchild. R.C. 2907.03(A)(5). Finally, a person commits gross sexual imposition if he engages in sexual contact with another who is not his spouse and who is under the age of thirteen. R.C. 2907.05(A)(4). The phrase "sexual conduct" includes fellatio. R.C. 2907.01(A). The phrase "sexual contact" refers to "any touching of an erogenous zone of another * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶15} W.S.'s mother testified that she found Mr. Peck, W.S., and her one-year-old son in the children's bedroom. She testified that Mr. Peck quickly peeked his head out of the room and appeared panicked as she approached. She also testified that, when she reached the doorway, he shoved W.S. away and attempted to hide his genitals. The mother saw that Mr. Peck had an erection and testified that it was visible because one leg of his shorts was pulled up over his erect penis. She stated that W.S. was staring at Mr. Peck's penis with a terrified look on her face and said that Mr. Peck "made [her] suck his wiener" because "his wiener [was] a sucker." W.S. also told her mother that Mr. Peck would give her candy when she complied and instructed her "not to tell anybody ever." The mother testified that, as W.S. spoke, she saw Mr. Peck looking at W.S., steepling his hands in front of his mouth, and shaking his head no.

6

{¶16} The nurse examiner who met with W.S. at the child advocacy center also testified on behalf of the State. The nurse examiner testified that W.S. disclosed Mr. Peck's sexual abuse to her during their interview. W.S. told the nurse examiner that Mr. Peck had touched her "pee pee" and had put his penis in her mouth. W.S. indicated that Mr. Peck told her his penis "was a sucker" and that she had "almost puked because he put it in too far * * *." When examining W.S., the nurse examiner observed bilateral redness at the back of her throat. She testified that there could be a number of reasons for the redness, but it did correlate with W.S.'s description of Mr. Peck's penis being inserted forcefully enough to make her want to vomit.

{¶17} Mr. Peck argues that his convictions are based on insufficient evidence because the State failed to prove that any sexual conduct or contact occurred. The crux of his argument is that the State's evidence was not believable. For example, he claims that the testimony of its witnesses was inconsistent in several respects and that W.S.'s answers suggested she was coached. Yet, challenges to the reliability or believability of the State's evidence sound in weight, not sufficiency. *See State v. Renaud*, 9th Dist. Summit No. 28439, 2017-Ohio-8218, ¶ 24; *State v. Sharrock*, 9th Dist. Summit No. 27452, 2015-Ohio-2253, ¶ 11. A sufficiency review requires us to examine all of the evidence in a light most favorable to the State. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Upon review of the evidence herein, we must conclude the State satisfied its burden of production.

{¶18} W.S. told both her mother and the nurse examiner that Mr. Peck placed his penis in her mouth and instructed her to treat it as if it were a sucker. The nurse examiner observed redness at the back of W.S.'s throat, and W.S.'s mother observed Mr. Peck and W.S. together in W.S.'s bedroom while Mr. Peck's penis was erect and fully exposed. A rational trier of fact could have

concluded that the State's evidence, if believed, established Mr. Peck's guilt beyond a reasonable doubt. *See id.* Accordingly, Mr. Peck's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AS THE TRIER OF FACT CLEARLY LOST ITS WAY GIVEN THE ENTIRE RECORD, THE INFERENCES DRAWN FROM THE UNTRUSTWORTHY AND UNRELIABLE EVIDENCE, AND THE LACK OF CREDIBILITY OF [MOTHER] AND [W.S.]**

{¶19} In his second assignment of error, Mr. Peck argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶20} As this Court has previously stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d 380, 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶21} Mr. Peck testified in his own defense and fervently denied that he ever sexually abused W.S. He testified that, on the day in question, he arrived home from work, changed into shorts, warmed up some lunch, and began watching television in the dining room area. When he finished his lunch, Mr. Peck testified, he brought his plate into the kitchen and saw W.S.'s mother

near the sink. According to Mr. Peck, the mother was bent over such that "[h]er butt crack was hanging out." He claimed that the sight aroused him, so he approached the mother and proceeded to rub his penis against her backside. Mr. Peck testified that he was not wearing any underwear and soon had an erection.

{¶22} Mr. Peck stated that he and the mother were interrupted when W.S. emerged from the children's bedroom and asked for help with her television. He testified that he immediately stopped what he was doing and offered to help W.S. According to Mr. Peck, the mother did not object to him helping W.S., so he took W.S. back to her bedroom. He indicated that the bedroom was only about five steps from the kitchen and, while it had a door, he did not close or lock it when he went inside with W.S. He claimed that he helped W.S. with the television before he heard a crash from the kitchen and quickly peeked his head out of the door. As he did so, Mr. Peck testified, the mother came into the room and began yelling at him and hitting him. Mr. Peck indicated that he had no idea why the mother was hitting him. He also denied that his erection was protruding from his shorts or that he attempted to hide it with a bucket.

{¶23} When the mother testified, she denied that she and Mr. Peck had any sort of sexual encounter in the kitchen. It was her testimony that Mr. Peck was sitting in the dining room area when W.S. came out of the children's bedroom to ask for help. It also was her testimony that Mr. Peck went directly to the bedroom and only came into the kitchen a short while later to retrieve some suckers. She denied that he ever rubbed against her. Further, as previously noted, her testimony as to what occurred when she walked into the children's bedroom was distinctly different than Mr. Peck's version of events.

{¶24} The officer who responded to the mother's 911 call testified that she was extremely distraught when he arrived. He described her as "hysterical" and testified that she reported seeing

Mr. Peck in the children's bedroom with W.S., trying to use a bucket to cover the erection he had sticking out of his shorts. Conversely, the officer indicated that Mr. Peck was calm when they spoke. Mr. Peck informed the officer that he was only in the children's bedroom to help with the television and that he never touched W.S. Nevertheless, he acknowledged that he had an erection at the time and "that it looked bad."

{¶25} The mother acknowledged that she never actually saw Mr. Peck engage in sexual conduct or contact with W.S. She also acknowledged that she told the police that W.S. backed away from Mr. Peck, not that he shoved her. Nevertheless, she maintained that Mr. Peck's erect penis was exposed, that W.S. told her what he had done, and that she began hitting Mr. Peck when he tried hushing W.S. During her testimony, the State also introduced a series of text message exchanges she had with Mr. Peck in the wake of this incident. In the messages, Mr. Peck repeatedly indicated that he was sorry for what he had done. Though he never explicitly admitted that he had sexually abused W.S., he repeatedly sought the mother's forgiveness and wrote: "I need help i know there will never be a Good enough reason for what i have done to you and our family I'm sorry[.]"

{¶26} Having reviewed the record, we cannot conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice when it found Mr. Peck guilty of rape, sexual battery, and gross sexual imposition. *See Otten*, 33 Ohio App.3d at 340. The trier of fact was essentially presented with conflicting versions of the events. The mother claimed that she walked in on W.S. and Mr. Peck while his penis was fully exposed and erect and that W.S. immediately disclosed that he had sexually abused her. Meanwhile, Mr. Peck claimed that he had an erection because of an earlier tryst with the mother, that his penis was never exposed, and that he had no idea why the mother was so upset. As the trier of fact, the trial court was in the best position to

judge the credibility of the witnesses and to evaluate their testimony accordingly. *See State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 10. This Court has repeatedly rejected the notion that a verdict is against the manifest weight of the evidence simply "because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Because Mr. Peck has not shown that this is the exceptional case where the evidence weighs heavily against his conviction, we reject his argument to the contrary. *See Otten* at 340. Accordingly, Mr. Peck's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE CAC FORENSIC INTERVIEW OF [W.S.] WHICH VIOLATED MR. PECK'S SIXTH AMENDMENT RIGHTS TO CONFRONT HIS WITNESSES AGAINST HIM BECAUSE IT WAS "TESTIMONIAL" AND NOT "MEDICAL TAKEN FOR THE PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT" AND WAS INADMISSIBLE UNDER *EVID. R. 803(4)* ESPECIALLY IN THAT THE COURT FOUND W.S. TO BE INCOMPETENT AS A WITNESS[.]**

{¶27} In his third assignment of error, Mr. Peck argues that the trial court abused its discretion when it admitted the statements W.S. made at the child advocacy center. He argues that W.S.'s statements were testimonial in nature, as they were not made for the purpose of medical diagnosis or treatment. Because W.S. was incompetent to testify, Mr. Peck argues, the admission of her statements violated his constitutional rights. For the following reasons, we reject his argument.

{¶28} "It is well settled that, '[t]o demonstrate reversible error, an aggrieved party must demonstrate both error and resulting prejudice.'" *State v. Austin*, 9th Dist. Summit No. 28199, 2017-Ohio-7845, ¶ 30, quoting *Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 18. *See also* Crim.R. 52(A). "Challenges to evidence based upon the

Confrontation Clause and hearsay are subject to a harmless-error analysis." *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 33. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus.

{¶29} Mr. Peck's third assignment of error concerns the admission of statements W.S. made while being interviewed at the child advocacy center. In those statements, W.S. indicated that Mr. Peck made her perform fellatio, gave her candy for doing so, and instructed her not to tell. Mr. Peck argues that the court ought to have excluded her statements because the State failed to establish that they were made for the primary purpose of medical diagnosis and treatment. *See In re E.L.*, 9th Dist. Medina No. 18CA0060-M, 2019-Ohio-1490, ¶ 8, 22. He has claimed that both the interviews conducted by the interviewer and the nurse examiner at the child advocacy center were deficient in several respects. Yet, even assuming arguendo that the trial court erred by admitting W.S.'s statements, the record supports the conclusion that the error was harmless beyond a reasonable doubt.

{¶30} W.S.'s mother testified that W.S. made several statements directly to her when she walked in on Mr. Peck and W.S. in the children's bedroom. Those statements were that Mr. Peck "made [W.S.] suck his wiener," that "his wiener [was] a sucker," that he would "give her a sucker for doing that to him," and that he told her "not to tell anybody ever." Though defense counsel objected to the admission of those statements, the trial court admitted them as excited utterances. *See* Evid.R. 803(2). On appeal, Mr. Peck has not addressed the admissibility of W.S.'s statements to her mother or their effect on his convictions. *See* App.R. 16(A)(7). This Court will not construct

an argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶31} W.S.'s statements to her mother, taken in conjunction with the mother's testimony about her own observations, established beyond a reasonable doubt that Mr. Peck was guilty of rape, sexual battery, and gross sexual imposition. The statements W.S. made at the child advocacy center were corroborative of the statements she made to her mother. As such, we must conclude that any error in the admission of her child advocacy center statements was harmless beyond a reasonable doubt. *See Williams*, 6 Ohio St.3d 281 at paragraph six of the syllabus. *See also State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 25. Accordingly, Mr. Peck's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**MR. PECK WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL[.]**

{¶32} In his fourth assignment of error, Mr. Peck argues that he received ineffective assistance of counsel. We disagree.

{¶33} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not

address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz,* 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶34} Mr. Peck argues that he received ineffective assistance of counsel for four reasons. First, he argues his attorney was ineffective for advising him to choose a bench trial, as the court had already heard damaging evidence against him in making its admissibility rulings. Second, he argues his attorney was ineffective for not introducing a diagram or measurement of the one-bedroom apartment where this incident occurred, as it would have proven just how unlikely it was that any abuse occurred mere steps away from W.S.'s mother. Third, he argues his attorney was ineffective for not presenting a defense expert to refute any suggestion that the redness observed in W.S.'s throat was related to the alleged assault. Finally, he argues his attorney was ineffective for not moving to suppress statements he made at the police station, as they were the result of a custodial interrogation.

{¶35} This Court has routinely recognized that "debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Shirley*, 9th Dist. Summit No. 20569, 2002 WL 5177, *7 (Jan. 2, 2002). The choices to waive a jury, to rely on cross-examination rather than call a defense expert, and to forego the filing of a motion to suppress may be considered matters of trial strategy. *See State v. Payne*, 9th Dist. Lorain No. 18CA011383, 2019-Ohio-4218, ¶ 25 (choice not to file motion to suppress constituted trial strategy); *State v. Spaulding*, 9th Dist. Summit No. 28526, 2018-Ohio-3663, ¶ 55 (choice to rely on cross-examination in lieu of calling an expert was a valid trial strategy); *State v. Woods*, 9th Dist. Medina No. 2589-M, 1997 WL 104634, *4 (Mar. 5, 1997) (choice to waive jury constituted trial tactic). Although the court heard damaging evidence against Mr. Peck in its admissibility determinations, it is presumed that a court in a bench trial "only considers matter properly before it." *State v. Pleban*, 9th Dist. Lorain No. 10CA009789,

2011-Ohio-3254, ¶ 45. Given the inflammatory nature of Mr. Peck's charges, defense counsel may well have determined that a jury trial was not a viable option. Likewise, his counsel strategically could have chosen to forgo the filing of a motion to suppress. Mr. Peck testified that he chose to meet with the police at the station the day after the incident, that he understood he was not under arrest, and that he knew he was free to leave. Defense counsel was not obligated to pursue a motion to suppress when that motion was unlikely to succeed. Nor was defense counsel obligated to call an expert in support of Mr. Peck's defense. On cross-examination, the nurse examiner conceded that there could have been any number of reasons for the redness at the back of W.S.'s throat. She did not definitively attribute the redness to a sexual assault, and counsel may well have decided not to draw additional attention to that issue by calling another witness to testify about the redness.

{¶36} To the extent Mr. Peck argues his counsel was ineffective for not introducing a diagram or measurements of the apartment he shared with W.S.'s mother, he has not shown that he sustained resulting prejudice. *See Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus. More than one witness indicated that the apartment was small, and Mr. Peck specifically testified that the kitchen was only about five steps away from the children's bedroom. Mr. Peck has not shown that, but for his counsel's failure to introduce a diagram or measurements, he would not have been convicted. *See id.*

{¶37} Upon review, Mr. Peck has failed to demonstrate that he received ineffective assistance of counsel. Accordingly, Mr. Peck's fourth assignment of error is overruled.

III.

{¶38} Mr. Peck's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.